**CERTIFIED COPY**

U.S. DISTRICT COURT
EASTERN DISTRICT-WI

# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 03-1549

UNITED STATES OF AMERICA,

              *Plaintiff-Appellee,*

v.

TRENISE BLAYLOCK,

              *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-CR-147—**Charles N. Clevert, Jr.,** *Judge.*

---

ARGUED MARCH 29, 2005—DECIDED JUNE 28, 2005

---

Before CUDAHY, WOOD, and SYKES, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Trenise Blaylock pleaded guilty to armed bank robbery and related offenses. At sentencing she stipulated to all upward adjustments under the guidelines save one: that she was an organizer or leader of a criminal activity involving at least five participants. On appeal she contends for the first time that she did not have sufficient control over four other participants to warrant that adjustment. Also for the first time, Blaylock invokes *United States v. Booker*, 125 S. Ct. 738 (2005). Although we

find Blaylock's arguments regarding the adjustment for her leadership role to be meritless, we remand for further proceedings under the procedure articulated in *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005).

Blaylock planned the robbery of Milwaukee's Guardian Credit Union, her former employer, and personally recruited three accomplices to help her. Her first recruit was her cousin, Lakesha Bruce. Blaylock then enlisted Omar Nelums and Weylin Shurn and tasked them with getting guns and stealing a getaway car. Blaylock was the one who chose the date of the robbery, April 11, 2002, because she knew that a shipment of $400,000 was due to arrive that day. She also drew a map of the credit union and parking lot and described details of the facility and its employees.

The plan was a failure. Blaylock, Bruce, Nelums, and Shurn all went to the bank at closing time and waited outside in the stolen car. When two of the tellers made their exit, Nelums and Shurn tried to grab them in the parking lot. One teller ran with Shurn in pursuit, while Nelums forced the other at gunpoint to the credit union's side door. Afraid for the teller's life, the manager let Nelums enter; when he got inside, Nelums shot the security cameras with his gun. But the bank employees told him that they could not open the drawers where he thought he would find the $400,000, so he grabbed $5,300 from another drawer and ran away. As he fled, a red dye pack in the loot exploded in his face. Nelums jumped into the getaway car with Blaylock and Bruce, and the three sped away. Meanwhile, Shurn had caught the other teller but let her go and jumped in the getaway car as it came by.

With Nelums covered in red dye and the others overcome by fumes, the fearsome foursome needed a place to clean up and regroup. As they neared the home of Jermaine Shurn, Weylin's brother, the four abandoned the getaway car and walked to the house. Jermaine's wife took them to

the basement to wash up, and Jermaine disposed of Nelums' clothes and other signs of their presence. Weylin Shurn called another brother, Terrecho Shurn, to drive them home. Terrecho hid Nelums and Weylin Shurn in the back of his car, while Blaylock and Bruce rode in the front seat since they had stayed in the getaway car and would not be recognized. According to the district court's findings of fact, Jermaine, Jermaine's wife, and Terrecho all knew about the robbery plot beforehand.

Ultimately, Blaylock pleaded guilty to armed bank robbery, 18 U.S.C. § 2113(a), (d); conspiracy to commit the robbery, *id.* §§ 371, 2113(a), (d); and using and carrying a firearm during a crime of violence, *id.* § 924(c). At sentencing Blaylock objected to the four-level increase under U.S.S.G. § 3B1.1(a) for organizing or leading a criminal activity with five or more participants. The court denied her objection. Nonetheless, it granted a downward departure for substantial assistance in the prosecution of her codefendants, *see* U.S.S.G. § 5K1.1, effectively lowering her total offense level for the robbery and conspiracy counts from 25 to 22. Using that offense level and Blaylock's Category I criminal history as a guide, the court sentenced her to concurrent sentences of 41 months on those counts, the low end of the departure "range" and well below the actual range of 57 to 71 months. The court imposed a consecutive sentence of 120 months on the § 924(c) conviction, the mandatory minimum since the gun was fired. *See* 18 U.S.C. § 924(c)(1)(A)(iii).

Section 3B1.1(a) provides for a four-level increase if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). In determining the defendant's role, the sentencing court must assess all "relevant conduct" under U.S.S.G. § 1B1.3, not just the elements of the offense charged. U.S.S.G. § 3B1.1(a), intro. cmt. In the case of joint criminal activity, relevant conduct

includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . that occurred during the commission of the offense of conviction . . . or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1), (a)(1)(B). Whether the defendant is a leader or organizer of a criminal activity involving five or more people requires a finding of fact that we review for clear error. *United States v. Reneslacis*, 349 F.3d 412, 416 (7th Cir. 2003). That standard has not changed after *Booker*. See *United States v. Parra*, 402 F.3d 752, 762-63 (7th Cir. 2005) (explaining that the standard of review for denial of a downward adjustment under U.S.S.G. § 3B1.2 is still clear error after *Booker*); *United States v. Turner*, 400 F.3d 491, 500 (7th Cir. 2005) (reviewing a sentencing court's factual findings for clear error after *Booker*).

As she did in the district court, Blaylock insists that she was one of only four participants, not five or more. According to Blaylock, the district court should not have counted Terrecho Shurn as a participant even though he helped her and Bruce, Nelums and Weylin escape. A "participant" is someone "who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, cmt. n.1. What matters is that he knowingly aided some part of the criminal enterprise. *United States v. Hall*, 101 F.3d 1174, 1178 (7th Cir. 1996); *United States v. Michalek*, 54 F.3d 325, 333-34 (7th Cir. 1995). Blayock reasons that Terrecho was not a participant since, in her view, the robbery was over as soon as the foursome reached Jermaine Shurn's house, and whether she "accepted a ride from Terrecho Shurn, walked home, or called a cab, was immaterial."

This contention ignores much of the record. Terrecho's effort to hide Weylin and Nelums made the ride part of the getaway, not a favor for family and friends. As the district

court explained and as Blaylock admitted at sentencing, Nelums was covered in red dye and the others overcome by fumes when they arrived at the Shurns' house. Without a place to clean up and regroup, their flight certainly would have been more obvious. And the ride they received from Terrecho put them further from the stolen getaway car. Indeed, the need to abandon the stolen car was foreseeable and supports the inference that all along they planned a separate leg to their getaway involving the Shurns.

Moreover, in adopting the factual statements in the presentence report, the district court also found that Jermaine and his wife were participants, and nowhere in her opening brief does Blaylock challenge that finding as clearly erroneous. Blaylock instead accuses the government of misrepresenting the record in counting Jermaine and his wife as participants, but it is Blaylock herself who misreads the record. The presentence report identifies Jermaine and his wife as participants and since Blaylock waited until her reply brief to contest that finding, she waived the argument. *See United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005) (arguments not raised in opening brief are waived); *United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004) (same). So whether the fifth participant was Terrecho or another one of the Shurns, we have no doubt that there were at least five participants in this criminal enterprise.

That takes us to Blaylock's second point. She contends, citing *United States v. Guyton*, 36 F.3d 655, 662 (7th Cir. 1994), that § 3B1.1(a) requires not only that she have been a leader or organizer in a criminal enterprise with five or more participants, but also that she have exerted "control"—whether direct or indirect—over at least four other participants besides herself. Although Blaylock concedes she exercised control over three participants, she insists that there was no evidence that she ever exerted any control over a fourth participant. Blaylock explains that she

never even met Terrecho before getting into his car, and as before she says nothing about Jermaine and his wife. Blaylock's objection at sentencing, however, was based only on the number of participants, so this "control" argument was not preserved for appeal and is reviewed for plain error. *See United States v. Kamoga*, 177 F.3d 617, 620-22 & n.5 (7th Cir. 1999) (arguments raised for first time on appeal are reviewed for plain error).

In *Guyton* we vacated the sentence of a drug conspirator responsible for the distribution of over five kilograms of crack cocaine because the district court increased his offense level four levels when there was no evidence of control over at least four other members of the conspiracy. *Guyton*, 36 F.3d at 661-62. Guyton had personally recruited two other conspirators, which showed control— whether direct or indirect—over those two co-conspirators, but there was no evidence of control over two more. *Id.* at 662. The record showed he fronted drugs to at least four members of the conspiracy, but we reasoned that fronting drugs without evidence of actual control was not enough. *Id.*

*Guyton* would thus appear to require a formalistic showing of control over at least four participants, and that is how we stated the rule in several other cases (sometimes in dicta). *E.g.*, *United States v. Richards*, 198 F.3d 1029, 1033-34 (7th Cir. 2000); *United States v. Zaragoza*, 123 F.3d 472, 483 (7th Cir. 1997); *United States v. Magana*, 118 F.3d 1173, 1203 (7th Cir. 1997); *United States v. Barnes*, 117 F.3d 328, 337 (7th Cir. 1997); *United States v. Hall*, 109 F.3d 1227, 1234-35 (7th Cir. 1997); *United States v. Salinas*, 62 F.3d 855, 862 (7th Cir. 1995); *United States v. Carson*, 9 F.3d 576, 584 (7th Cir. 1993); *United States v. Schweihs*, 971 F.2d 1302, 1318 (7th Cir. 1992); *United States v. McGuire*, 957 F.2d 310, 316-17 & n.4 (7th Cir. 1992). These cases reiterate a test that in *McGuire*,

957 F.2d at 317 n.4, we imported from *United States v. Reid*, 911 F.2d 1456, 1464-65 & n.8 (10th Cir. 1990). We noted in *McGuire*:

> The court in *Reid* stated ... that a defendant receiving a "leader or organizer" enhancement under § 3B1.1(a) must have some control, direct or indirect, over the five participants. This makes sense: to lead an organization you must control its members.

*McGuire*, 957 F.2d at 317 n.4. Our observation was dicta, because *McGuire* was a case about § 3B1.1(b), but we soon applied it to the four-level adjustment. *Schweihs*, 971 F.2d at 1318. The Tenth Circuit, however, has since reconsidered and rejected its requirement of control over four participants, reasoning that a 1993 amendment to Application Note 2 clarifies that control over a single participant is all that is required.[1] *United States v. Cruz Camacho*, 137 F.3d 1220, 1224 n.3 (10th Cir. 1998) ("In light of this substantive change to the guidelines, we believe our language in *Reid*, which was proper in regards to the guidelines in place at that time, is no longer good law."). Meanwhile, the Fifth Circuit also considered and expressly rejected *McGuire* and *Reid*, likewise reasoning that the 1993 amendment clarified that control was necessary over only one person. *United States v. Okoli*, 20 F.3d 615, 616 (5th

---

[1] The 1993 amendment added what is now Application Note 2:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. App. C, amend. 500 (effective Nov. 1, 1993).

Cir. 1994). Indeed, to the extent that we still cling to the formalistic requirement, we are virtually alone. *Cf. United States v. Gaskin*, 364 F.3d 438, 466-67 (2d Cir. 2004) (control over one or more participants is necessary for § 3B1.1(a) to apply); *United States v. Eis*, 322 F.3d 1023, 1025 (8th Cir. 2003) (per curiam) (same); *United States v. Owusu*, 199 F.3d 329, 345-47 (6th Cir. 2000) (same); *Cruz Camacho*, 137 F.3d at 1224 n.3 (same); *United States v. Harris*, 39 F.3d 1262, 1270-71 (4th Cir. 1994) (same); *Okoli*, 20 F.3d at 616 (same); *United States v. Barnes*, 993 F.2d 680, 684-86 (9th Cir. 1993) (same). And even our own cases demonstrate a move away from the rigid approach. *See United States v. Hardamon*, 188 F.3d 843, 851-52 (7th Cir. 1999) (control over at least four participants is not required); *Kamoga*, 177 F.3d at 620-22 (same); *see also United States v. Hanhardt*, 361 F.3d 382, 393-94 (7th Cir. 2004) (explaining that a defendant must have organized or directed another participant for § 3B1.1(a) to apply), *vacated and remanded for further proceedings sub nom. Altobello v. United States*, 125 S. Ct. 994 (2005); *United States v. Mijangos*, 240 F.3d 601, 604-05 (7th Cir. 2001) (same). We thus question whether we should have perpetuated our own adherence to *Reid* after the 1993 amendment to the guidelines made clear that "control" over only one person is necessary. *See Cruz Camacho*, 137 F.3d at 1224 n.3.

Regardless, we already rejected an argument indistinguishable from Blaylock's in *United States v. Kamoga*—although Blaylock inexplicably failed to bring that case to our attention and attempt to distinguish it. Robert Kamoga was convicted of bank fraud and his offense level increased by four levels because he was the leader of a scheme to cash worthless checks and distribute the proceeds among his co-conspirators. *Kamoga*, 177 F.3d at 618-20. Luring them with the promise of "fast money," Kamoga first recruited two middlemen, Newton and Jones, and directed

them to enlist "someone else" to deposit counterfeit checks from Kamoga. *Id.* at 619. Newton and Jones signed up Bledsoe, and Bledsoe recruited Vinson and Strickland. *Id.* Then Kamoga gave Newton two fraudulent checks, which Newton passed to Bledsoe. *Id.* Bledsoe made the checks payable to S & S Enterprises (owned by Vinson and Strickland). *Id.* The checks found their way to Strickland, who opened a new account for S & S, where he deposited them, withdrawing the proceeds. *Id.* Strickland, however, was arrested, and Kamoga's plan unraveled. *Id.* Kamoga argued that the four-level adjustment was unwarranted because there was no evidence that he controlled anyone but Newton and Jones, or that he even knew or could reasonably have foreseen that there were at least four other participants in the criminal enterprise. *Id.* at 620-21. Rejecting his arguments, we held that—*Guyton* notwithstanding—we do not mechanically require the defendant to exercise "control" over four other participants in order for the four-level adjustment to apply. *Kamoga*, 177 F.3d at 620-22 & n.4; *see also Hardamon*, 188 F.3d at 851-52 (citing *Kamoga*). All that is required is that the defendant provide leadership and organization for a criminal enterprise comprised of five or more persons and actually control at least one of the participants. *Hanhardt*, 361 F.3d at 393-94; *Mijangos*, 240 F.3d at 604-05. And the defendant's leadership role can be demonstrated by any of seven factors. U.S.S.G. § 3B1.1, cmt. n.4 ("Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."). These factors in mind, the dispositive question is relative responsibility for the crime—not "control" over each of the other participants as

such. *Kamoga*, 177 F.3d at 621; *see also Hardamon*, 188 F.3d at 851-52. Therefore, it is enough that the other participants act "in furtherance" of the defendant's plan; to hold otherwise would permit "masterminds" to escape responsibility by delegating duties. *Kamoga*, 177 F.3d at 621-22. Here, Blaylock was just the type of mastermind we envisioned in *Kamoga*. She was the impetus behind the robbery, had the inside knowledge, and devised the plan. She also recruited three participants who in turn recruited all of the remaining participants. And because Terrecho was a part of the criminal enterprise that Blaylock masterminded, it is irrelevant whether she had ever met him before getting into his car. Thus, the record supports the adjustment.

All that is left is *Booker*, 125 S. Ct. 738. Because Blaylock raises her *Booker* argument for the first time on appeal, we review it under the plain-error standard articulated in *Paladino*, 401 F.3d at 481-84. As the government concedes, a limited remand under *Paladino* is required here because there is no way to be certain whether the sentencing judge would have given a shorter sentence under the guidelines had he known they were advisory. *See id.* (explaining that remand is appropriate when we are in doubt about whether the judge would have imposed a lighter sentence under an advisory regime); *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005) (same); *see also United States v. Woodard*, 408 F.3d 396, 399 (7th Cir. 2005) (remanding under *Paladino* where the district court erred by applying the guidelines as if they were mandatory, although there was no Sixth Amendment violation); *United States v. Castillo*, 406 F.3d 806, 823-24 (7th Cir. 2005) (same); *United States v. White*, 406 F.3d 827, 834-37 (7th Cir. 2005) (same). Thus, although the district court properly calculated Blaylock's sentence under the formerly mandatory regime, we order a LIMITED REMAND, while retaining jurisdiction, so the district court may consider

CERTIFIED COPY

whether it would impose a different sentence under the now-advisory guidelines.

A true Copy:

    Teste:

*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—6-28-05